## ADAPTING HIGHWAY TO DIAGONAL CROSSING BY RAILWAY.

Circuit Court of Medina County.

L. O. BROWN ET AL v. THE AKRON & CHICAGO JUNCTION RAILROAD COMPANY.*

Decided, May, 1907.

*Diversion of Highway by Railroads—Necessity and Convenience of Public Governs Right to Divert Highway—Diversion of Highway May Be Permanent.*

1. When in the construction of a railroad it becomes necessary to cross a highway in the country at such an angle as to render the building of a necessary bridge impracticable, the grade of the railway being twenty-seven feet above the grade of the highway, the railroad company is granted, by Section 3284, Revised Statutes, the right to divert the course of the highway, that a crossing may be made at right angles, provided it does not impair the usefulness of said highway.

2. The question of the necessity of the diversion of a highway for railroad purposes is for the court to decide, and in determining such question the convenience and necessity of the whole public, including travelers on the railroad as well as the highway should be considered.

3. The diversion of a country highway which is authorized by Section 3284, Revised Statutes, may be permanent, provided said diversion is reasonably necessary, and does not unreasonably interfere with the use of said highway by the public.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This case involves the right of a railroad company to divert a public highway, and the manner in which the diversion should be made, if permitted.

The contention between the parties, together with a map of the proposed changes, will be found fully set forth in the opinion of Judge Washburn, published in the Ohio Law Bulletin, April 8, 1907, at page 418, and for that reason, we shall confine

---

*Affirmed without opinion, except as to compensation for maintenance, *Brown et al* v. *Railway*, 79 Ohio State, 440.

this opinion to a brief statement of the conclusions we have reached.

We have no doubt that under Section 3284, Revised Statutes, a railroad company has the right to permanently divert a highway or country road, when it becomes necessary to do so in the construction of its road; such diversion, however, must be reasonable and the highway must be restored to such condition as will not impair its permanent usefulness.

The necessity for the grant of such power to a railroad company is manifest, when we consider the great number of township and other officials with whom a new road must deal in crossing the state, and the diverse views apt to be held by them, but it is to be regretted that the Legislature has not limited and defined this right by requiring notice and application to some tribunal for approval of plans of the railroad company, before they are executed.

An arrogant exercise of this right by a railroad company naturally stirs the local officials and people, whose pride and independence sometimes will not bend to a reasonable settlement of the controversy. The courts, however, must see that the right is so exercised as to produce the greatest good to the greatest number.

The best engineering skill of the country has been produced and given in opinions as to the proper method of crossing a diagonal road with a railroad on an embankment or fill of from 26 to 42 feet, intended to take care of fast trains on a through line. Without exception, all these experts have said that a stone arch crossing the highway at right angles is the best construction.

Such a bridge estimated to cost about $50,000, with a middle arch of 60 feet span and two side arches of 35 feet each is planned by the railroad company, the side arches to accommodate future trolley lines on the highway. To build such a bridge requires a diversion of the highway, making it 280 feet longer than the old location along the original road, and means that it will take less than one minute longer to walk from Lodi to West Salem, or less than one half minute longer to drive that distance that it formerly took over the old road.

On the other hand the engineers all agree that a skew bridge at the old location of the road is not beyond engineering skill and the various standard styles of such bridges will not cost more than fifty to one hundred per cent. more than the stone arch planned by the railroad company.

Counsel for plaintiffs urge that the paramount interest of the public on the highway requires that the old diagonal course of the highway be retained, no matter what the cost of engineering difficulties, and the sole practical reason assigned for this demand is that thereby a longer view of approaching automobiles might be had; that this is important because horses shy at automobiles more in the country than they do in the city.

It is in evidence that of the 775 vehicles which passed this point during two days in April this year, three were automobiles. The contour of the old road is somewhat rolling, so that the slight hills on it might hide approaching vehicles. It also appears that there is a clear view of approaching teams for a distance of from 520 to 700 feet through the stone arch planned by the railroad company. This is twice the view one has in the city where automobiles run out of intersecting streets from behind obscuring business blocks. When we remember that the middle span of the stone arch planned on the diverted road is sixty feet and the road macadamized and of a regular grade, it would seem that one accustomed to pass automobiles on the ten foot traveled portion of a country road would have little trouble in passing an automobile under or approaching this arch. We think the automobile difficulty is as trivial as the 280 feet extra distance on the road.

Again, the suggestion of plaintiffs' which involves piers or abutments in the middle of the diagonal road, must be discarded on account of the ruling in *Railway Co.* v. *Elyria,* 69 O. S., 414, leaving the only possible construction a steel structure, either on a skew, or with extra long span if the abutments are squared. The center line of the road would run for 120 feet under this structure and it would seem that the noise and vibration resulting from the passage of trains over such structure has been forgotten by those who suggest it for the benefit of drivers upon the highway.

No man would dare to drive under such a bridge when a train was passing over it. Travel on the highway would come to a standstill at such times. But not so with the stone arch under which one might pass without knowledge whether a train was on top or not.

. Our conclusion is that as all engineers agree that the stone arch is the best for the public traveling on the railroad, and as but trivial inconveniences result to the public traveling on the highway, from the diversion of the road, that an injunction should not be granted against the diversion of the diagonal road as planned by the defendant railroad company.

As to the diversion of the North and South road, called the Chatham road, we are not satisfied that the railroad company has or contemplates restoring it to its former usefulness. The map exhibited to us shows a reasonable and satisfactory diversion of the travel to the westward which formerly passed over the Homerville road and will now pass on the proposed road north of the railroad until it reaches the arch over the Black river, under which it will pass to the Homerville road on the south, but it is unreasonable to require those traveling between Chatham and West Salem to go so far east as the first bridge we have considered, without making the way to it as short as it reasonably can be made. We think a fair solution of this difficulty is offered by the opening of a diagonal road about 1300 feet long in a northwesterly direction from station C on the map, to a point on the Chatham road, 1000 feet northerly from station B, at the junction of said road with the new road north of and parallel to the railroad.

This new diagonal road should be macadamized and correspond in all respects with the diversion of the West Salem road, and the distance over it would be only about 900 feet longer than over the old Chatham road through to the West Salem road.

There is little travel over this road, and driving between Chatham and West Salem would probably take no longer than it did before, as the road would be better. Incidentally those living on the Chatham road would reach Lodi, the nearest village, much easier than ever before.

There is one objection to the creation of the new roads suggested, and that is that the public authorities would have considerably more public highway to take care of.  The suggestion of Judge Washburn that the railroad company contribute the sum of $500 for the maintenance of these extra roads is a good one.  It would seem, also, that upon the completion of the new roads, the Chatham road south of the railroad, and the Homerville road from the West Salem road west to Black river would be useless, and might be abandoned and vacated, in case the proper public authorities shall hereafter deem it wise to do so.

Decree may be drawn pursuant to this opinion in this case and cases numbered 138 to 143; injunction against the diversion of the West Salem road, as planned by the defendant company, is refused, but the railroad company is enjoined from diverting the Chatham road in any other manner than as suggested by this court.  The case will be continued until the improvements are completed, so that the progress of the work may be subject to the control of the court.  The decree may also specify in detail the changes and plans of the defendant with regard to both roads, and should be submitted to the court, with exceptions, if any, of opposing counsel, in writing, within ten days.